Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| PETRA GONZALEZ MARTINEZ<br><br>Parte Apelante<br><br>v.<br><br>UNIVERSAL INSURANCE COMPANY<br><br>Parte Apelada | TA2026AP00239 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm.: SJ2022CV06964<br><br>Sobre: Ley de Acción de Clase del Consumidor, Violación de Contrato |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de abril de 2026.

El 5 de marzo de 2026, la señora Petra González Martínez (la señora González Martínez o la apelante) presentó ante nos una *Apelación* en la que solicitó que revoquemos la *Sentencia* emitida el 2 de febrero de 2026, notificada el 3 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1]

En el aludido dictamen, el foro primario desestimó, con perjuicio, la *Demanda* radicada por la apelante en la que resolvió que Universal Insurance Company, Inc., (Universal o la parte apelada) cumplió con indemnizar a la apelante conforme a las condiciones contractuales de la póliza suscrita entre las partes.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

---

[1] Entrada Núm. 32 del caso núm. SJ2022CV06964 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

**I.**

El caso de epígrafe tiene su origen el 4 de agosto de 2022, cuando la señora González Martínez instó una *Demanda* en la que alegó que, Universal emitió una póliza de seguro, anejada a la *Demanda*, que cubría los daños que sufriera su vehículo de motor.[2] Arguyó que, alrededor del 22 de septiembre de 2021, sufrió un accidente de tránsito en el que su vehículo sufrió varios daños a consecuencia de ello. Así pues, adujo que, la parte apelada le informó que los daños sufridos por dicho vehículo eran cubiertos por la póliza. Con ello, sostuvo que, Universal le cursó un estimado en el que le esbozó los gastos que cubría la póliza de seguro. Señaló que, la parte apelada en su estimado aplicó un veinte (20) por ciento de deducción al valor de la propiedad por el año del vehículo y el costo. Esgrimió que, Universal pagó la cuantía de $1, 704.37 con relación a las piezas que debían reemplazarse en el vehículo. No obstante, la apelante argumentó que, Universal pagó $155. 74 menos al valor acordado en la póliza. Consecuentemente, solicitó que, el foro primario certificara la causa de acción como un pleito de clase en virtud de que varias personas no fueron compensadas a tenor a los términos contractuales contenidos en la póliza de Universal. Además, solicitó que, el TPI ordenara a Universal pagar la cuantía adicional a las personas agraviadas por un accidente del cual no fueron compensados conforme a la póliza de seguro de la parte apelada.

Así las cosas, el 7 de octubre de 2022, Universal radicó una *Moción de desestimación* en la que argumentó que, en la póliza de cubierta, anejada debidamente certificada, se desprende que, el límite de la cubierta es "el valor real en efectivo de las partes dañadas del automóvil al momento de la pérdida".[3] La parte apelada, señaló

---

[2] Entrada Núm. 1 del caso núm. SJ2022CV06964 en el SUMAC.
[3] Entrada Núm. 14 del caso núm. SJ2022CV06964 en el SUMAC.

que, el valor real en efectivo es "el costo del reemplazo de la propiedad por razón de depreciación que sufrió las piezas dañadas a lo largo del tiempo antes de que ocurriera el accidente." Ante los reclamos de la apelante, Universal alegó que su ajustador ajustó "el costo de las piezas nuevas originales incluidas en el estimado al valor real en efectivo". Por tanto, al descontar el deducible correspondiente, dio lugar a la cuantía cuestionada por la apelante.

Empero, Universal alegó que, la apelante estaba insatisfecha con el monto concedido y, por tanto, la parte apelada accedió a que el vehículo fuese re-inspeccionado en el taller de confianza de la señora González Martínez. Así, la parte apelada y la señora González Martínez lograron un acuerdo por la suma de $1,989.19 tras aplicarle la depreciación correspondiente y, la apelante recibió un cheque con dicha cuantía. Por otro lado, la parte apelada ripostó que, la póliza anejada en la *Demanda,* no estaba debidamente certificada y, a su vez, no representaba una copia fiel y exacta del contenido de la póliza a la cual se refería la apelante. Ello, pues la póliza anejada por la apelante era vigente a partir del 14 de diciembre de 2021 y el accidente ocurrió el 22 de septiembre de 2021. Por ende, las alegaciones contenidas en la *Demanda* no guardaban una relación con la póliza emitida y acordada entre las partes. Por tanto, solicitó la desestimación, con perjuicio, de la *Demanda* dado que la señora González Martínez fue debidamente compensada al amparo de los términos y condiciones de la póliza.

En respuesta, el 22 de noviembre de 2022, la apelante presentó una *Oposición de la demandante a moción de desestimación presentada por Universal Insurance Company* en la que admitió que, durante el descubrimiento de prueba demostrará la póliza aplicable a los hechos y, en la que surgirá que Universal no compensó conforme a lo establecido en la póliza a sus asegurados.[4] En esa

---

[4] Entrada Núm. 18 del caso núm. SJ2022CV06964 en el SUMAC.

línea, aseveró que, Universal podía aplicar la depreciación para saber el valor real en efectivo. Alegó que, mediante engaño consintió al pago emitido por Universal. Asimismo, ripostó que, las alegaciones contenidas en la *Demanda* justifican la concesión del remedio debido a que la parte apelada incumplió en indemnizar a la apelante.

Tras diversos incidentes procesales, el 2 de febrero de 2026, notificada el 3 de marzo de 2026, el TPI emitió una *Sentencia*[5] en la que formuló las siguientes determinaciones de hechos:

1. Universal expidió la Póliza de Auto Personal núm. PAP1159305 a nombre de Petra González Martínez y/o José A. Vazquez Martínez con fecha de efectividad del 14 de diciembre de 2020 al 14 de diciembre de 2021 ("Poliza").
2. La Poliza provee cubierta, entre otras cosas, para daños por colisión para un vehículo marca Acura modelo RDX del año 2017 con número de identificación 5J8TB4H3XHL015369 ("Acura RDX"). 3. El límite de responsabilidad aplicable al vehículo Acura RDX se describe en la Po liza como el Valor Real Efectivo del vehículo menos el deducible de $500.
4. El deducible de colisión aplicable a la Acura RDX es de $500.00.
5. La Póliza define "Valor Real en Efectivo" de la siguiente manera: Límites y Condiciones de Pago VALOR REAL EN EFECTIVO A menos que haya sido limitado por la cantidad establecida en las Declaraciones, el límite de nuestra cubierta es el valor en efectivo de su automóvil o de sus partes dañadas al momento de la pérdida. Para determinar el valor en efectivo, nosotros tomaremos en consideración:
   1. El valor razonable en el mercado;
   2. La edad; y
   3. La condición de la propiedad al momento de la pérdida. Adema s a nuestro pago por la pérdida, se pagará n los gastos necesarios y razonables de remolque y almacén para proteger el automóvil de daños adicionales.
6. El 27 de septiembre de 2021, la Sra. González, a través de su productor de seguros MAS Seguros, Inc., presento una reclamación a Universal por un incidente ocurrido el 22 de septiembre de 2021 en el que impacto "una muralla" con su vehículo Acura RDX.
7. Universal acuso recibo de la reclamación el 27 de septiembre de 2021 y le asigno el número 2225023.
8. La Sra. González recibió orientación sobre su reclamación y una lista de la Red de Talleres participantes de Universal, los cuales esta n disponibles alrededor de la isla y honran el estimado preparado por Universal de forma que, si la Sra. González así lo interesaba, podía utilizar uno de esos talleres.
9. El 29 de septiembre de 2021, la Demandante llevo la Acura RDX a un taller de la Red de Talleres de Universal, C.A. Service, Corp., donde el vehículo fue inspeccionado y se emitió un estimado del costo de la reparación por la cantidad de $2,360.11.

---

[5] Entrada Núm. 32 del caso núm. SJ2022CV06964 en el SUMAC.

10. El ajustador de Universal ajustó el costo de las piezas nuevas originales incluidas en el estimado al valor real en efectivo de las piezas a ser sustituidas y descontó el deducible aplicable, lo que dio lugar a que se le extendiera una oferta a la Sra. González por la cantidad neta de $1,704.37, la cual sería pagada directamente al taller de reparación C.A. Service, Corp.

11. La Sra. González decidió no reparar la unidad en el taller de C.A. Service, Corp., y declino firmar la Carta de Pago Directo al Taller, por lo cual se coordinó una reinspección del vehículo para el 4 de octubre de 2021 en las facilidades de Universal.

12. El 4 de octubre de 2021, la Acura RDX fue reinspeccionada en Universal y se llamó al taller de confianza de la Demandante, Ledsan Auto, llegándose a un acuerdo con este.

13. El 4 de octubre de 2021, un técnico de Universal emitió un nuevo estimado del costo de la reparación por la cantidad de $3,257.41, según acordada con el taller de preferencia de la Sra. González.

14. El estimado del 4 de octubre de 2021 detallaba las partidas de labor, piezas nuevas originales, piezas de repuesto y materiales.

15. El estimado del 4 de octubre de 2021 identificaba 5 piezas necesarias para la reparación, con un costo total de $2,395.21.

16. Cuatro de las 5 piezas incluidas en el estimado eran piezas nuevas originales, saber:

    (a) R Rear Door Shell (Steel/HSS) con numeracio n 67510-TX4-A90ZZ por $1,273.79;

    (b) R Rear Combination Lam Assembly con numeración 33500-TX4-A51 por $409.48;

    (c) R Rear Bumper Cover con numeración 04715-TX4-A50ZZ por $512.04; y

    (d) R Rear Bumper Spacer con numeración 71593-TX4-A02 por $14.90.

    (e) Una de las 5 piezas incluidas en el estimado era pieza de repuesto: Right Rear Wheel por $185.00.

17. El ajustador de Universal ajusto el costo de las piezas nuevas originales incluidas en el estimado del 4 de octubre de 2021 al valor real en efectivo de las piezas a ser sustituidas y descontó el deducible aplicable, lo que dio lugar a una oferta a la Sra. González por la cantidad neta de $2,359.57 que le sería pagada directamente a ella.

18. El ajustador de Universal aplico una depreciación de 20% solamente a las piezas nuevas originales incluidas en el estimado para ajustarlas al valor real en efectivo de las piezas a ser sustituidas al momento de la pérdida.

19. Las piezas nuevas originales incluidas en el estimado sumaban $1,989.19, por lo que la depreciación que se aplico era equivalente a la cantidad de $397.84.

20. A la única pieza de repuesto incluida en el estimado, con un costo de $185.00, no se le aplico ajuste ni depreciación.

21. Universal le proveyó a la Demandante un documento de Comprobación de Pérdida Automovilística en el cual se establece que la pérdida, previa a deducible, por concepto del accidente asciende a $2,859.57, cantidad a la que se le aplico el deducible de $500 establecido en la Póliza, dando lugar a la cantidad neta a pagar de $2,359.57.

22. La Demandante firmó la Comprobación de Pérdida Automovilística.

El 4 de octubre de 2021, Universal emitió el cheque número 411763 a favor de la Sra. González por la suma de $2,359.57.

24. El 4 de octubre de 2021, la Sra. González recogió el cheque en las oficinas de Universal.

El foro primario resolvió que, la póliza anejada en la *Demanda* no era la póliza correspondiente puesto que dicha póliza no era la vigente al momento del accidente. Ello, toda vez que, el accidente ocurrió el 22 de septiembre de 2021, y la póliza anejada iniciaba su vigencia el 14 de diciembre de 2021. Igualmente, decretó que, la póliza que la apelante anejó no estaba debidamente certificada por un agente o gerente de Universal. El TPI determinó que, en la póliza surgía que, el límite de responsabilidad de Universal era basado en el valor real en efectivo al momento de la pérdida, el cual se fundamenta en la condición y edad del vehículo. Así pues, el foro primario razonó que, Universal cumplió en pagarle a la apelante a tenor con el valor del mercado las piezas nuevas originales. A su vez, el vehículo en controversia depreció puesto que el vehículo fue comprado en el año 2017 y el incidente ocurrió en el 2021. Ante ello, el *foro a quo* resolvió que, Universal cumplió con su deber de indemnizar a la apelante conforme al valor del vehículo previo al accidente. En otros términos, el TPI determinó que, no procedía la solicitud de la apelante en cuanto a certificar el pleito como uno de clase dado que no cumplió con los requisitos procesales para ello.

Inconforme, el 3 de marzo de 2026, la señora González Martínez presentó una *Apelación* en la coligó los siguientes señalamientos de error:

> Primer error: Erró el TPI al considerar, sin antes dar aviso, evidencia fuera de las alegaciones en la demanda a pesar de tratarse de una moción de desestimación que requería asumir como cierto los hechos alegados en la demanda.

> Segundo error: Erró el TPI al concluir que, como cuestión de derecho, el deber de indemnización requería aplicar la alegada depreciación, cuando el principio de indemnización es la razón por la cual no procede aplicar automáticamente la supuesta depreciación.

> Tercer error: Erró el TPI al concluir que el descuento por depreciación realizado por Universal sin que Universal probara el peso de establecer la legalidad de la aplicación de un descuento por depreciación la razonabilidad del método utilizado para calcular la depreciación y la base fáctica para aplicar dicho descuento, elementos sobre los cuales Universal tenía el peso de la prueba de demostrar.

En cumplimiento con nuestra *Resolución*, el 6 de abril de 2026, la parte apelada radicó un *Alegato de Universal en oposición a apelación*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nos.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2 dispone que,

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.

La Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2 permite que un demandado solicite al Tribunal que desestime la demanda antes de contestarla cuando "es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Inmobiliaria Baleares, LLC v. Benabe González*, 214 DPR 1109, 1128 (2024); *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La solicitud debe hacerse mediante una moción y tiene que estar fundamentada bajo los siguientes fundamentos: (1) falta de jurisdicción sobre la materia o [la] persona, (2) insuficiencia del emplazamiento o su diligenciamiento, (3) dejar de exponer una reclamación que justifique la concesión de un remedio, o (4) dejar de acumular una parte indispensable. *Inmobiliaria Baleares, LLC v. Benabe González, supra*, pág. 1128; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022); *López García v. López García*, 200 DPR 50, 69 (2018). Ahora bien, las partes o el Tribunal motu proprio puede elevar el planteamiento de falta de jurisdicción

sobre la materia y esta puede hacerse en cualquier etapa de los procedimientos. *Shell v. Srio. Hacienda*, 187 DPR 109, 122 (2012). En lo pertinente, una desestimación por la parte dejar de exponer una reclamación que justifique la concesión de un remedio, el Tribunal Supremo ha resuelto que al resolver una moción de desestimación los tribunales están obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. *El Día. Inc. v. Mun. De Guaynabo*, 187 DPR 811, 821 (2013).

Al momento de evaluar una moción al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, el Tribunal tiene que tomar como cierto los hechos alegados en la demanda y considerarlo de la manera más favorable para el demandante. *Inmobiliaria Baleares, LLC v. Benabe González, supra*, pág. 1129; *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 396. Para que un demandado prospere ante una moción bajo la Regla 10.2 de Procedimiento Civil, *supra*, tiene que demostrar que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiera probar en apoyo a su reclamación, aun interpretando de forma liberal la demanda. *Inmobiliaria Baleares, LLC v. Benabe González, supra*, págs. 1129-1130; *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 396. Ante una moción bajo la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, el Tribunal debe examinar si el demandante no tiene derecho a que se ventile el pleito, ya sea al amparo del remedio principal o el alternativo. *Cobra Acquisitions v. Mun. Yabucoa et al., supra*, pág. 397. Si el foro primario resuelve que la demanda no cumple con estándar de plausabilidad, el tribunal debe desestimar la demanda y no permitir que una demanda "insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba puedan probarse las alegaciones conclusorias". R. Hernández Colón, *Derecho procesal civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 307.

**B.**

El Art. 1063 del Código Civil, 31 LPRA sec. 8984, establece que una de las fuentes de las obligaciones son los contratos. Con ello, el Art. 1230 del Código Civil, 31 LPRA sec. 9751, define a un contrato "como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Así pues, lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y los terceros en la forma en que dispone la ley. Art. 1233 del Código Civil, *supra* sec. 9754. Para que un contrato quede perfeccionado deben concurrir los siguientes elementos: consentimiento de los contratantes, objeto y causa. *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Los contratos se rigen por la autonomía de la voluntad de las partes en el que estas pueden establecer pactos, cláusulas y condiciones que estimen conveniente, siempre que no sean contrarias a la ley, moral y orden público. *Oriental Bank v. Perapi, supra*. Otro principio que rige las obligaciones es el principio *pacta sunt servanda* la cual establece que las obligaciones nacen de los contratos que tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012).

El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. A cambio de una prima, se transfiere el riesgo de un evento especifico a la aseguradora, quien viene obligada a cubrir los daños económicos por los que el asegurado este llamado a responder. *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017). Así pues, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta manera proteger al

asegurado de ciertos eventos identificados en el contrato de seguros. *Íd.*

El Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, (Código de Seguros) es la ley que reglamenta las prácticas y los requisitos del negocio de seguros. *Jiménez López et al v. SIMED*, 180 DPR 1 (2010). Tal negocio, está revestido de un alto interés público, por lo que ha sido regulado ampliamente por el Estado. *Molina v. Plaza Acuática*, 166 DPR 260, 266 (2005). En cuanto a la interpretación de las pólizas, el Código de Seguros establece que todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125.

Cabe señalar, el Código de Seguros identifica prácticas desleales en el ajuste de reclamaciones presentadas por sus asegurados. Así, establece los términos que tienen las aseguradoras para completarlo. En el proceso del ajuste de la reclamación la aseguradora tiene que intentar de buena fe llevar a cabo un ajuste rápido, justo y equitativo de una reclamación de la cual surja claramente la responsabilidad. 26 LPRA sec. 2716a.

**III.**

En el caso de autos, la señora González Martínez argumentó que, no procedía la desestimación en virtud de que el *foro a quo* no tomó como cierto los hechos alegados en la *Demanda*. Por otro lado, alegó que, el TPI erró en aplicar la depreciación toda vez que, debió evaluar la legalidad de ello y adjudicar conforme al principio de indemnización.

Por estar relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

Conforme las normas jurídicas pormenorizadas, una de las fuentes de las obligaciones son los contratos. Para que un contrato tenga validez y surta efecto, deben concurrir los siguientes elementos: consentimiento, objeto y causa. Una vez, un contrato sea válido este es ley entre las partes. En lo que nos atine, uno de los contratos que rigen nuestro ordenamiento jurídico es el contrato de seguro. Un contrato de seguro es aquel que, una aseguradora se obliga a indemnizar al asegurado ante un evento incierto el cual está cobijado por la aseguradora. Los términos y condiciones del contrato de seguro se interpretarán de forma global al amparo de interpretar según los términos y condiciones que surgen de dicho contrato.

Por otro lado, y en lo pertinente a la controversia, ante una moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, las alegaciones contenidas en la *Demanda* deben interpretarse de la forma más beneficiosa. De lo contrario, si estas no justifican la concesión del remedio solicitado, procede la desestimación de la causa de acción conforme la Regla 10.2 de Procedimiento Civil, *supra*, R.10.2.

Ciertamente, luego de un análisis detallado de las alegaciones de la apelante concurrimos con el foro primario en que la *Demanda* no contenía alegaciones que justificaran la concesión del remedio solicitado por la apelante.

A tenor con lo establecido en la Regla 10.2 de Procedimiento Civil, *supra*, y la normativa aplicable, resolvemos que las alegaciones contenidas en la *Demanda* instada por la apelante son insuficientes y, por tanto, deja de exponer una reclamación que justifique la concesión de un remedio al amparo de la normativa aplicable a los contratos, particularmente un contrato de seguro. En virtud de ello, la señora González Martínez no indicó con suficiente especificidad los actos en los que incidió Universal los cuales justifiquen determinar que esta actuó contrario a los términos y condiciones

que constan en el contrato de póliza. Ello, tras indemnizar a la apelante aplicando la deducción por depreciación en la indemnización concedida a la señora González Martínez. Consecuentemente, resolvemos que el *foro a quo* actuó correctamente en desestimar, con perjuicio, la causa de acción dado que la apelante no demostró que ostenta un derecho al remedio que solicitó toda vez que, Universal cumplió con los términos contractuales suscritos en la póliza en cuestión.

A la luz de lo anterior, resolvemos que el foro primario actuó correctamente en desestimar, con perjuicio, la causa de acción presentada por la apelante.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones